## Cass County Bank v. Adam Bricker.

[Filed May 18, 1892.]

1. **Negotiable Instruments:** Defenses: Duress: Compound-
   ing Felony. There was testimony tending to show that one S.
   had removed mortgaged property from the county without the
   consent of the mortgagee, for which he was arrested and impris-
   oned. The defendant and one W. thereupon signed a note with
   the mortgagor for the amount of the debt and costs. *Held*, That
   the answer failed to state facts showing duress, or of compound-
   ing a felony, and that the proof failed to sustain either charge.

2. ——: ——: ——: ——. The owner of property stolen
   or wrongfully taken may reclaim the same, or receive compen-
   sation for the injury sustained, and this compensation may be
   by promissory note signed by sureties; and unless there is an
   agreement on his part to forbear the further prosecution of the
   case, or to suppress some of the evidence, the defense of com-
   pounding a felony will not be available against the note.

3. ——: Suretyship. *Held*, That the testimony tends to show
   that the surety had received property from the principal and
   had assumed the payment of the debt.

Error to the district court for Howard county. Tried
below before Tiffany, J.

*Paul & Templin*, for plaintiff in error:

The defense of duress cannot be set up by a stranger or
surety. Before such defense will prevail, there must have
been some consideration exacted for a corrupt agreement to
not prosecute a felony. (*Oak v. Dustin*, 3 New Eng. Rep.
[Me.], 614; Am. Crim. Law, sec. 10; Bishop, Contracts,
494, 720; *Heaps v. Dunham*, 95 Ill., 588; *Taylor v. Cot-
trell*, 16 Id., 93). As to the defense of duress: *Hilborn v.
Bucknam*, 3 New Eng. Rep. [Me.], 267; *Oak v. Dustin*,
Id., 614; *Taylor v. Cottrell*, 16 Ill., 93; *Bothwell v. Brown*,
51 Id., 234.

*Darnall & Kendall, contra,* cited, contending that the defenses made were available to be a surety: Maxwell, Pl. & Pr. [5th Ed.], 672; *Foley v. Green,* 1 New Eng. Rep. [R. I.], 17.

MAXWELL, CH. J.

This action was brought on a promissory note as follows:

"$344.              PLATTSMOUTH, NEB., July 7, 1883.

"One day after date we jointly and severally promise to pay to the order of the Bank of Cass County three hundred and forty-four dollars, value received, with interest at ten per cent per annum from maturity until paid. Negotiable and payable at the Bank of Cass County.

> "WILLIAM R. SHAW.
> "ADAM BRICKER.
> "W. R. ANTHONY."

Bricker alone answered the petition, in which he evidently sought to allege the compounding of a felony. In the briefs, however, the defense is claimed to be duress—that is, that the note in question was executed under duress. On the trial of the cause the jury returned a verdict for the defendants, upon which judgment was rendered. It appears from the record that some time prior to the giving of the note in question William R. Shaw had executed a mortgage to a man named Sharp, upon certain personal property possessed by him; that Sharp transferred the mortgage and note accompanying the same to the plaintiff; that the defendant Shaw either sold the property or removed it from the county—the proof on that point is not very clear, nor is it material now.

It also appears that Shaw was arrested on complaint of the plaintiff and placed in the jail of Cass county, apparently waiting an examination when the defendant, with one Anthony, gave a new note for the amount of the debt

and costs and the former note and mortgage were delivered up. There is some testimony tending to show that. they were delivered to the defendant Bricker, but whether so delivered or not cannot affect this case. On the 4th of October, 1884, the defendant paid on the note in question the sum of $34.40, and October 17, 1887, the sum of $50. The remainder of the note is unpaid.

Sec. 177 of the Criminal Code provides: "If any person shall take money, goods, chattels, lands, or other reward, or promise thereof, to compound any criminal offense, such person shall be fined in double the sum or value of the thing agreed for or taken, but no person shall be debarred from taking his goods or property from the thief or felon, or receiving compensation for the private injury occasioned by the commission of any such criminal offense."

In *School District v. Collins*, 41 N. W. Rep. [Dak.], 466, the defense was that the note was given to compound a felony. The court says: "In defenses of this kind, where it is sought to invalidate a written contract by parol evidence, it should be made to clearly appear that the arrangement was in contravention of public. policy. Vague and indefinite statements are not sufficient. The understanding or agreement relied on must be positive and certain, entered into and relied upon by both parties.

"Says Judge Caldwell in *Swann v. Swann*, 21 Fed. Rep. [Ark.], 299: 'No court ought to refuse its aid to enforce a contract on doubtful and uncertain grounds. The burden is on the defendant to show that its enforcement would be in violation of the settled public policy of this state or injurious to the morals of its people. Vague surmises and flippant assertions as to what is the public policy of the state, or what would be shocking to the moral sense of its people, are not to be indulged in.'

"Says the lord chief justice in *Walsh v. Fussell*, 6 Bing. [Eng.], 163: ' To hold a contract void on the ground of its

impolicy or inconvenience we ought to be clearly satisfied that the performance of it would be necessarily attended with injury or inconvenience to the public?'

"In *Malli v. Willett*, 57 Iowa, 705, 11 N. W. Rep. [Ia.], 661, one witness being asked what the consideration was, said that A wanted to prosecute B for adultery with his wife, and the note was executed so as not to have any fuss with him about it—to settle up the matter. The court held that the design to compound a criminal prosecution did not clearly appear, and that verdict should have been for the plaintiff. Says the chief justice: 'An agreement is not void on this ground unless it expressly and unquestionably contravenes public policy and be manifestly injurious to the interest of the state.' Iowa likens it to declaring a law unconstitutional and void.

"Says Judge Cole, in *Richmond v. Railway Co.*, 26 Ia., 202: 'The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.'

"In *Kellogg v. Larkin*, 3 Pin. [Wis.], 123, the court says: 'Before a court should determine a contract which has been entered into in good faith, stipulating for nothing that is *malum in se* * * * to be void as contravening the policy of the state, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical. He is the safest magistrate who is more watchful over the rights of the individual than over the convenience of the public, as that is the best government which guards more vigi-. lantly the freedom of the subject than the rights of the state.'

"In *Johnston v. Allen*, 22 Fla., 224, it was held that 'Where a valid acceptance is transferred by the payee to a person under arrest for embezzlement, to enable him to

effect a compromise, and is given by him to the persons from whom he has embezzled to secure the payment of whatever sum might be due from him, the acceptance is not thereby made invalid as given to compound a felony, unless, in consideration thereof, the persons from whom he embezzled agreed to abandon the prosecution against him; and even then the liability of the acceptor is not affected if he was not privy to the agreement.'

"In *Barrett v. Weber*, 125 N. Y., 18, it was held that a mortgage given by a married woman to secure the payment of goods stolen by her husband, is not void as given to compound felony, in the absence of any promise on the part of the mortgagees to forbear prosecution for the crime, or to suppress evidence tending to prove it; and in *Schultz v. Catlin*, 47 N. W. Rep. [Wis.], 946, where the felony was denied by the defendant, it was held a note given for the debt could not be avoided by the defense that it was given to compound a felony."

In order to establish the defense of compounding a felony it must appear that there was an agreement not to prosecute the case or to suppress evidence tending to prove it. The owner of goods stolen has a right to receive compensation therefor. The person accused may be anxious to make restitution but be unable to pay at once, and hence must give security either personally or through his friends, and the mere fact that he is liable to be punished for the crime will not invalidate the obligation. This rule was established in *Munday v. Whittemore*, 15 Neb., 647, and is believed to be sound law, and this disposes of the question of duress so strongly urged on behalf of the defendant in error.

There are other reasons why the defendant Bricker is liable. We find the following letters in the record:

"St. Paul, Neb., May 6, 1887.

"*Mr. J. M. Patterson, Plattsmouth*—Dear Sir: Yours of the 3d at hand. I don't blame you for writing me a

sharp letter. I ought to have wrote long ago. I made a settlement with William Shaw. He swapped his place for cattle and I took the cattle. I had to allow more for them than I could get for them now. I took them and am to pay Shaw. Mr. Anthony has got nothing, so I knew I would have the note to pay. I got 33 head of year-ling calves. I also had to furnish Shaw with $100 more money, so he owes me $100 yet. He had a loan on his place, so he has nothing left. It would be almost impos-sible for me to pay you now and will pay you as quick as I can. I think can pay you soon, the interest at least. I can hardly ask you to wait any longer, but you know had it not been for me you would never got anything. Of course you have never got much yet, but you will get it, but I don't want you to sue it, for I will pay it as soon as I can, for I can make the money out of the calves after awhile. Hope I can pay you soon.

"Yours truly,          ADAM BRICKER."

"ATLANTA, NEBR., February 21, 1887.

"*Mr. J. M. Patterson*—SIR: I am trying to settle with Wm. Shaw. I have to take his place, and if I do I will have to ask wait on me till I can sell it. Please let it be till you hear from me. Will write soon.

"ADAM BRICKER."

These calves are shown to have been worth at the time of purchase at least $8 per head, and so far as we can judge the defendant, in consideration of receiving them, assumed the payment of the note. In no view of the case, therefore, can the judgment be sustained. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.