[Civ. No. 2740.   Fourth Dist.   July 9, 1942.]

HERMAN MILLER, Appellant, v. ELTON A. WALDEN
et al., Respondents.

J. L. Hofflund for Appellant.

Sloane & Steiner and Weinberger & Miller for Respondents.

WEST, J. pro tem.—Two appeals are involved in this matter. One is an appeal from a judgment in favor of Elton A. Walden and Clara L. Walden, who were defendants and cross-complainants, and in favor of Lawrence Holzman, trustee, cross-defendant, and the other is an appeal from an order of the trial court, granting a motion to vacate a judgment previously made in favor of appellant, and entering a new judgment against such appellant. The appeals are taken on the judgment roll alone.

The facts as they appear are as follows:

Bertha M. Murphy, since about the year 1930, was the owner of all of the assets of the Joseph W. Murphy Mortgage Company, which company dealt in mortgage loans and acted as a mortgage broker, using as its capital therein monies furnished by Mrs. Murphy to Forrest C. Walden, who was the manager and operator of the organization.

The true nature of the business relation which existed on December 22, 1938, between Bertha M. Murphy and Forrest C. Walden is not entirely clear. It was found that Mrs. Murphy was the owner of all of the assets of the Joseph W. Murphy Mortgage Company on said date, and for some time thereafter, and that Forrest C. Walden operated the organization through the use of assets loaned to him by Mrs. Murphy, and that he was the sole manager, but without any actual ownership of the assets used in the business; nevertheless, other findings made clearly indicate that when the adjudications in bankruptcy of Mrs. Murphy and of Forrest C. Walden were made, both of said parties were treated as though each of them, individually, were doing business as Joseph W. Murphy Mortgage Company and Murphy Realty Company. It seems apparent that no point of such inconsistency was made in the trial court, in view of a stipulation signed by counsel for all parties that the findings prepared in such form and containing such apparent inconsistency might be signed by the trial court in the form as presented.

Appellant Miller had invested funds with the company over a period of years, subsequent to 1930. He had a total credit of $6,500 with the company, which sum Forrest C. Walden, without the knowledge or consent of appellant, had

converted to his own use. Appellant from time to time demanded of Walden the return of this sum, and finally notified the office of the district attorney of San Diego County. Walden was called into the district attorney's office and was interrogated with respect to the money. He became impressed with the fear that Miller would cause criminal prosecution to be started, and thereupon communicated with respondents Elton A. Walden and Clara L. Walden and solicited their assistance in extricating himself from his difficulty. The trial court found that at no time did appellant or anyone on his behalf expressly agree or state that if the obligation owing him from Forrest C. Walden were paid or secured, he would refrain from instituting criminal proceedings. It was found that appellant by his words and conduct caused the Waldens and Mrs. Murphy to understand that immediate criminal prosecution would ensue unless the obligation were paid or secured. The record fails to disclose how such words and conduct on the part of the appellant were used, or what appellant said or did, but it does appear that acting in pursuance to the fear of prosecution and in the belief that if a note were executed and adequate security posted, prosecution would be avoided, Forrest C. Walden, Elton A. Walden and Clara L. Walden on the 22d day of December, 1938, made and executed a promissory note in the sum of $6,500, payable to appellant, and that contemporaneously respondents Elton A. Walden and Clara L. Walden assigned in blank and delivered to appellant various stocks and bonds owned by them to secure the payment of the note. On the same day, the Waldens made an agreement with Bertha M. Murphy whereby Mrs. Murphy agreed to secure Elton A. Walden and Clara L. Walden against loss by causing certain real property, of which she was the beneficial owner, to be conveyed to them.

It appears clearly that the Waldens did not at the time of the execution of the note and the assignment of the collateral express to appellant that they were entering into the transaction in order to prevent the criminal prosecution of Forrest C. Walden, and likewise it appears that the agreement between the Waldens and Bertha M. Murphy with respect to the transfer of the real estate to the Waldens was without the knowledge of the appellant. It is true, however, that after appellant had received the note and stock, he notified the district attorney of San Diego County that satisfactory adjustment had been made, and that he did not there-

after communicate with the authorities regarding Forrest C. Walden's conversion of his money.

Shortly after the matters just referred to, and pursuant to her agreement, Bertha M. Murphy conveyed her real estate to Elton A. Walden and Clara L. Walden, which conveyance was accepted in trust by the grantees with the understanding that if Forrest C. Walden did not pay the promissory note theretofore delivered to appellant, the grantees should sell the real property and reimburse themselves as to any liability attaching to them upon the note, but that if the note were paid by Forrest C. Walden, they would convey the real estate back to Mrs. Murphy. This arrangement was likewise without the knowledge of the appellant.

On the 22d of December, 1938, Forrest C. Walden, Bertha M. Murphy and Murphy Mortgage Company were each and all insolvent, and each and all had been during all of that month. Forrest C. Walden was adjudicated a bankrupt in April, 1939, and Bertha M. Murphy, doing business as Joseph W. Murphy Mortgage Company and Murphy Realty Company was adjudicated bankrupt on June 22, 1939. Respondent Lawrence Holzman was appointed trustee in bankruptcy of both of said bankrupt estates. The bankrupt estates did not have assets sufficient to pay the claims of creditors.

The trial court found that on or about the 22d day of May, 1939, and with due promptness, respondents Elton A. Walden and Clara L. Walden gave notice purporting to rescind their promissory note and deposit of security. No notice of rescission was given by Forrest C. Walden or by Holzman as trustee in bankruptcy of the estates of Forrest C. Walden and Bertha M. Murphy.

One other fact appears which might well be mentioned, and which throws some light upon the reason for the transactions out of which the litigation grew.

The wife of Forrest C. Walden is a sister of Bertha M. Murphy. Elton A. Walden is a second cousin of Forrest C. Walden, and Clara L. Walden is the wife of Elton A. Walden. Appellant after said notice of rescission was given filed his action to enforce the payment of his promissory note, together with interest and counsel fees, and to cause sale of the collateral. The only defendants named were respondents Elton A. Walden and Clara L. Walden, who filed their answer to the complaint. They then secured an order of the Superior Court of San Diego County, joining as cross-defendants Law-

rence Holzman, as trustee of Forrest C. Walden, doing business as Joseph W. Murphy Mortgage Company and Murphy Realty Company, a bankrupt, and Lawrence Holzman as Trustee of Bertha M. Murphy, a bankrupt. Respondents Elton A. Walden and Clara L. Walden by their cross-complaint alleged that the bankrupts had created a preference by the conveyance of the real estate. They also alleged that they had executed their promissory note and pledged their security upon the representation of Forrest C. Walden and appellant Miller that if they did not do so, criminal charges would be brought against Forrest C. Walden. They prayed that cross-defendants be required to set forth the nature of their claims upon the real estate, for rescission of the promissory note and for the return of their security. Holzman, as trustee of the estates in bankruptcy of Forrest C. Walden and Bertha M. Murphy, appeared and alleged the insolvency of Forrest C. Walden and Bertha M. Murphy as of December 22, 1938, and thereafter and alleged that appellant Miller knew of the insolvency of Forrest C. Walden and of Bertha M. Murphy, and that the effect of the transfer of the real estate to Elton A. Walden and Clara L. Walden was to make a preference under the provisions of the Federal Bankruptcy Act. He concurred in the rescission of the note and assignment of security and prayed that the real property theretofore conveyed to respondents Elton A. Walden and Clara L. Walden be recovered for administration of the bankruptcy estate being administered by him. The court concluded that the promissory note and assignment of personal property were valid and enforceable; that no rescission had been effectuated, and that no grounds therefor existed; that no preference or fraud of creditors resulted by virtue of the transaction; that appellant was entitled to judgment against Elton A. Walden and Clara L. Walden for the principal amount of the note, plus accrued interest and attorneys fees, and to have a sale made of the collateral security in enforcement of the judgment. A decree of foreclosure was thereupon made and entered.

Respondents Elton A. Walden, Clara L. Walden and Holzman, as trustee, thereafter, and in pursuance to sections 663 and 663a of the Code of Civil Procedure, moved to set aside and vacate the judgment and to enter another and different judgment on the ground that the conclusions of law, upon which the judgment was based, were not consistent with and

supported by the findings of fact. The trial court granted the motion and drew new conclusions of law to the effect that the promissory note and pledge of personal property were voidable; that Elton A. Walden and Clara L. Walden, Bertha M. Murphy and Forrest C. Walden, and each of them, were entitled to rescind the note and all transactions and conveyances, and that each did duly rescind the note and other transactions; that no preference or fraud of creditors resulted by virtue of the execution of the note or of any of the other transactions; that respondents were entitled to judgment against appellant for cancellation of the promissory note, the return to respondents Elton A. Walden and Clara L. Walden of the securities posted by them as collateral to the note and for such interest as they had paid appellant on the note; that respondent Holzman was entitled to judgment against respondents Elton A. Walden and Clara L. Walden for delivery to him, as trustee, of a quitclaim deed to the real property previously conveyed to indemnify Elton A. Walden and Clara L. Walden against loss. A judgment was duly entered in accordance with the new findings and the two appeals now before us followed.

Appellant attacks the judgment and order from which he has appealed on various grounds. However, in the absence of menace or duress or fraud, respondents cannot prevail. We deem it unnecessary to consider any questions other than the existence in or absence from the record of any finding of such elements.

If there is a finding of any one of them, the judgment appealed from must be affirmed. If there is not a finding of any of them, it follows that the first judgment which was vacated upon motion should be reinstated and the judgment and order appealed from reversed.

█ The element of fraud may be easily disposed of. There was no finding made by the court that either appellant or Forrest C. Walden made any statement to the other Waldens either by way of suggestion, positive assertion or promise of that which was untrue, or that either of them suppressed any true fact or acted in a manner fitted to deceive as to the situation existing. On the contrary, it appears that the note was executed and the security posted because of the fear that the embezzler would be prosecuted and in the belief that if the security was given appellant would refrain from instituting criminal proceedings. It just as clearly appears, how-

ever, that appellant did not expressly agree or state that if the obligation were paid or secured he would refrain from instituting criminal proceedings, and if it were impliedly agreed, the findings do not disclose it. Nothing approaching fraud was found by the court.

The question of duress is also one which can be quickly disposed of. There was no arrest and confinement of Forrest C. Walden on account of the transaction, and therefore no duress (Civ. Code, § 1570; *Morrill* v. *Nightingale,* 93 Cal. 452 [28 Pac. 1068, 27 Am. St. Rep. 207].)

If respondents are to prevail, it must be because menace was exercised in the procurement of the promissory note and collateral security. Section 1569 of the Civil Code declares duress to consist in the "Unlawful confinement of the person of the party, or the husband or wife of such party," etc., or the "Confinement of such person, lawful in form, but fraudulently obtained. . . ." Section 1570 provides that menace consists in a threat of the duress above specified or of the threat of injury to the character of any such person. For the purpose of determining whether there was menace as contemplated by section 1570, *supra,* we will briefly review the statement of facts, insofar as it throws light on the acts and conduct of the parties to the action leading up to the execution of the note and the posting of the security.

Walden converted money belonging to the appellant who demanded its return and employed counsel to collect it. Next, appellant notified the district attorney of San Diego County, who questioned Walden with regard to his embezzlement. As a result, Walden became apprehensive of prosecution and conveyed his fears to his second cousin and his wife, without any knowledge on the part of the appellant. The next step was that the cousin and his wife came to San Diego and a conference was had with appellant, in which conference appellant again demanded payment, and in which conference by his words and conduct, the nature of which are not disclosed, caused the parties who were signatory to the note to understand that appellant would cause immediate prosecution, unless restoration of the sums taken was made, and also by his words and conduct, the nature of which are likewise not disclosed, led the parties to believe that if a note and security were posted, he would take no steps to press prosecution, although it was not expressly so stated. Induced solely by the fear thus created through words and conduct of some character, the transaction was made, following which

appellant notified the district attorney that the matter had been adjusted. Respondents have directed our attention to a number of cases which they contend are authority for holding that duress and menace are present by virtue of what occurred between the parties here. However, in our opinion, all of these cases may be clearly distinguished. We will consider a few of them briefly.

In *Morrill* v. *Nightingale, supra,* the defense to an action upon a promissory note given was menace, and it appeared that plaintiffs had fraudulently and illegally procured a warrant for the arrest of the defendant, not for the purpose of prosecuting or convicting the defendant of any crime, but for the purpose of frightening and intimidating him, and execution of the note was induced solely by well-grounded belief that he would be prosecuted if he refused to execute the same. In *Woodham* v. *Allen,* 130 Cal. 194 [62 Pac. 398], it was held that a complaint which alleged that defendant threatened plaintiff that if money were not immediately paid he would procure the arrest of plaintiff's husband on a charge of felony stated a cause of action. In *People* v. *Beggs,* 178 Cal. 79 [172 Pac. 152], where the defendant was being prosecuted for the crime of extortion, it appeared that there was a threat to prosecute clearly shown, and the menace exerted on his victim was clear. In *Merchants Collection Agency* v. *Roantree,* 37 Cal. App. 88 [173 Pac. 600], the evidence showed that there was a threat to have the defendant arrested for embezzlement if he did not pay a sum claimed to have been taken. No exception can possibly be taken to the rule laid down in any of the cases cited by respondents, but in all of them there were wrongful threats and those threats clearly appeared either by virtue of having caused the issuance of criminal process or by specific language used to consummate the improper purpose of the guilty party. In the case before us, we have been unable to find any finding of any threat whatsoever. The real effect of the findings appearing in the judgment roll is that either the district attorney or the appellant said or did something which induced a fear of prosecution, and acting thereon the note was executed and the collateral deposited. We do not feel that any statement or act of appellant or of any other person acting in the matter comes within the legal definition of menace as contained in section 1570 of the Civil Code. Insofar as there was any action upon the part of appellant or any words used by him as reflected by the findings, the same is not with any degree of clarity shown to have been unlawful in any event. It is true that

appellant employed counsel. It is true that he consulted the district attorney with regard to Forrest Walden's embezzlement. It is true that he demanded payment from Forrest Walden, and it is true that by some words and conduct of his all of the Waldens were led to the conclusion that whether or not the guilty party was prosecuted was dependent on the execution of the note, but certainly the threat which is necessary to constitute menace must be more than some statement or act from which a guilty party becomes apprehensive of prosecution. We are impelled to the conclusion that in this regard the findings of the court support the first conclusions of law drawn by the court, and do not support those drawn subsequently and upon which the judgment appealed from was predicated.

Sections 1569 and 1570 of the Civil Code make clear that duress and menace arise by virtue of unlawful action upon the part of some person, but we are unable to see where appellant indulged in anything unlawful or improper, so far as the findings disclose. His visit to the district attorney, his employment of counsel, and his demand for the return of his money were all certainly proper and not in any manner inconsistent with his legal rights. If fear of prosecution resulted therefrom, and the execution of the note followed from such fear, no inference of illegality could arise therefrom. If thereafter there was other language used by appellant or other conduct on his part, unlawful either in form, or actually, the findings fail to express it. It might well be that knowing of the visit to the district attorney's office, the fear which induced the execution of the note could have followed any conduct or language, regardless of its character, even if such language merely was intended to and did constitute a threat to file a civil action. But it is the threat and not the apprehension which makes out the menace and that threat must be an unlawful and invalid one. A threat to exercise a valid legal right cannot be construed to be an act of duress. (*Santa Ana Sugar Co.* v. *Smith,* 116 Cal. App. 422 [2 P. (2d) 866].)

The situation reflected by the record here is somewhat similar to that found in the case of *Murray Showcase & F. Co.* v. *Sullivan,* 15 Cal. App. 475 [115 Pac. 259]. There, one Sullivan, who was the manager of a business concern, appropriated goods and money of his employer, to which he was not entitled. He had procured a fidelity bond conditioned for the faithful performance of his duties. After his employment had terminated, he was called upon to adjust his affairs with his

former employer, and was advised that unless he arranged such adjustment the matter would be placed in the proper channels for collection, and that his bond would be relied upon to collect the amount due. He was not threatened with criminal prosecution, nor was any promise made that no prosecution or arrest would be made if adjustment were effected, but he did cause notes to be executed by himself and a comaker in adjustment of the shortage. At the time the notes were executed Sullivan did not fear that his arrest and prosecution would be caused by his former employer, but did believe that his failure to deliver said notes might result through the bonding company in prosecution. When suit was brought on the notes a defense was interposed that they had been procured by threats. The contention made was that suggested procedure on the bond implied a threat to injure Sullivan's character, as well as a threat of arrest and imprisonment. The court on appeal held that such contention was without merit. In the case before us, it is true that the Waldens feared prosecution of Forrest Walden at the instance of appellant, but such fear does not appear to have followed any threat but only "words and conduct" of an undisclosed nature. Such a finding is insufficient to imply either a threat of injury to character or of prosecution.

In view of what has been said, we think it unnecessary to consider any of the other contentions of appellant as contained in his brief, as they become immaterial. Since we conclude that the conclusions of law and the judgment appealed from are inconsistent with the findings of the court, the judgment and order appealed from are reversed, and the cause remanded, with directions that the court below enter judgment for plaintiff in accordance with the decree of foreclosure dated October 15, 1940.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied August 6, 1942, and respondents' petition for a hearing by the Supreme Court was denied September 2, 1942.